IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RACHEL LASSITER,

    Plaintiff,

v.                                                No. 16-cv-1008 SMV/CG

ANDREW CARVER and
CITY OF CARLSBAD POLICE DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion to Dismiss and/or for Summary Judgment and for Qualified Immunity and Memorandum of Law in Support Therefor[] [Doc. 24], filed on February 2, 2017. Having considered the briefing,[1] the record, and the relevant law, the Court finds that Defendants are entitled to summary judgment on the federal claims. Defendants' Motion to Strike [Doc. 34] will be denied as moot. The Court declines to exercise supplemental jurisdiction over the state-law claims, which will be dismissed without prejudice.

## Background

The following is a statement of the facts, as supported by the record, which the Court will construe in the light most favorable to Plaintiff.

---

[1] Plaintiff responded on February 27, 2017. [Doc. 28]. Defendants replied on March 24, 2017. [Doc. 31].

On June 7, 2015,[3] two people reported to Defendant Officer Carver that they had been defrauded by a spiritual healer named Theresa Guadalupe Rivera. Defendants' Motion to Dismiss and/or for Summary Judgment, Undisputed Material Fact ("UMF") No. 3, [Doc. 24] at 2. The victims had fallen on hard times and responded to a radio advertisement for a faith healer, hoping that she could help them. Affidavit of Andrew Carver, ¶¶ 7–8, [Doc. 24-1] at 2. The faith healer told the victims that they needed to give her their jewelry and all their cash so that she could "heal and bless" it. *Id.* at ¶¶ 10, 13. They gave her their jewelry and all their cash. *Id.* at ¶¶ 11, 14. The victims contacted the police when the faith healer refused to return the cash and jewelry. *Id.* at ¶¶ 4–5, 15–17.

The victims told Officer Carver that the swindler was operating out of a storefront at 318 West Mermod Street in Carlsbad. UMF No. 3, [Doc. 24] at 2; Carver Aff., ¶ 18, [Doc. 24-1] at 3. They also reported that the faith healer drove a smaller black SUV. Carver Aff., ¶ 20, [Doc. 24-1] at 3. Officer Carver recalled seeing a black SUV parked in front of 318 West Mermod Street on previous occasions. *Id.* at ¶ 21. A few days later the receptionist for the police department gave Officer Carver the license plate number (MNT-326) of a vehicle she had seen parked directly in front of 318 West Mermod Street. *Id.* at ¶¶ 22–23. The receptionist described the vehicle as "a small SUV." *Id.* at ¶ 23. Officer Carver investigated the license plate number and discovered that it belonged to a 2014 black four-door Lexus SUV registered to Plaintiff. *Id.* at ¶ 24. Plaintiff attempts to dispute this fact. She claims that her vehicle is a four-door sedan, not an SUV. Response to Motion to Dismiss and Summary Judgment,

---

[3] Defendants' statement of Undisputed Material Facts ("UMF") lists the date as June 7, 2016. UMF 3, [Doc. 24] at 2. That is a typographical error. Other documents in the record make clear that the events in question took place in 2015, not 2016.

[Doc. 28] at 4, ¶ F. She attaches to her Response purported copies of her vehicle registration. [Doc. 28-8] at 2–3. These documents describe Plaintiff's vehicle, with license plate number MNT-326, as a Lexus LS4. *Id.* Plaintiff claims that a "simple inquiry upon Google" would have revealed to Officer Carver that a Lexus LS4 is a sedan, not an SUV. [Doc. 28] at 4. Although the certificates of registration are not authenticated by affidavit (or otherwise), the Court will assume for purposes of its analysis that Plaintiff's vehicle is a sedan and not an SUV.

Officer Carver obtained a photo of Plaintiff and showed it to the victims. Carver Aff., ¶ 25, [Doc. 24-1] at 3. Both victims "immediately and affirmatively identified [Plaintiff] without any hesitation or doubt as [the person who stole] their jewelry and their money." *Id.*[5] Officer Carver made multiple attempts to locate and contact Plaintiff without success. *Id.* at ¶ 26.

Officer Carver filed a criminal complaint against Plaintiff, under oath, on June 17, 2015. UMF No. 8, [Doc. 24] at 3; Ex. A to Motion, [Doc. 24-1] at 5–7. A magistrate issued a warrant for Plaintiff's arrest based on Officer Carver's affidavit. Ex. A to Motion, [Doc. 24-1] at 8. Executing the arrest warrant, Carlsbad police officers arrested Plaintiff in the 300 block of West Mermod Steet in Carlsbad, New Mexico on July 7, 2015. UMF No. 10, [Doc. 24-1] at 3; Complaint, ¶ 18, [Doc. 1] at 4. They hand-cuffed her and detained her at the Eddy County Detention Center, where she was strip searched. Complaint, ¶ 20, [Doc. 1] at 4. The criminal charge against her was eventually dropped. *Id.* at ¶ 21.

---

[5] Plaintiff attempts to dispute this fact as she claims that only one of the victims identified Plaintiff as the swindler. *See* Response, [Doc. 28] at 3 ("Defendant Carver proceeded to show picture of Plaintiff [only picture shown] to Ms. Vallejo who identified Plaintiff as person of Theresa Rivera." (brackets in original)). However, the basis for this statement is unclear. It appears to be nothing more than argument of counsel. As such, the Court cannot consider it. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) ("[T]he argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment.").

Plaintiff filed this lawsuit against Officer Carver and the Carlsbad Police Department alleging that Officer Carver was responsible for her being arrested and detained without probable cause. She acknowledges that a magistrate issued a warrant for her arrest. Nevertheless, she argues that Officer Carver's investigation was so "totally deficient" that he is liable under federal and state law. [Doc. 28] at 1. She also argues that Defendant City of Carlsbad Police Department is liable under federal and state law for failing to train and supervise Officer Carver. *Id.* at 7–9.

## **Standards**

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A nonmovant must respond to a motion for summary judgment with evidence, and the content or substance of that evidence must be admissible." *Wall v. Boone*, 1996 WL 44245, at *1 (10th Cir. 1996) (unpublished) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (where motion for summary judgment is supported by affidavits or other material provided under oath, the nonmovant must respond with affidavits or other evidence to show a genuine issue of material fact)). Although the evidence can be presented in a form not admissible, e.g., an affidavit or deposition, "the content or substance of the evidence must be admissible." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (emphasis omitted) (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)).

When a defendant raises qualified immunity as a defense, "a plaintiff must properly allege a deprivation of a constitutional right and must further show that the constitutional right

4

was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)). Ordinarily, "[i]n this circuit, to show that a right is clearly established, the plaintiff must point to 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014)). The Tenth Circuit Court of Appeals has recently clarified the contours of this standard:

> "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." In the Fourth Amendment context, "the result depends very much on the facts of each case," and the precedents must "squarely govern" the present case. "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law."

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308, 309 (2015) (per curiam) (other internal quotation marks and citations omitted)); *see also Callahan*, 806 F.3d at 1027 ("The law is also clearly established if the conduct is so obviously improper that any reasonable officer would know it was illegal.").

Officers must have probable cause to initiate a search, arrest, and prosecution under the Fourth Amendment. Probable cause is not a precise quantum of evidence—it does not, for example, "require the suspect's guilt to be 'more likely true than false.' Instead, the relevant question is whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'" *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citations omitted); *see also United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) ("As the standard itself indicates, *probable* cause does not require metaphysical certitude or proof beyond a reasonable doubt. Probable cause is a matter of probabilities and common sense conclusions, not certainties. At the same time, probable cause requires, of course, more than mere suspicion that unlawful activity is afoot." (internal quotation marks and citations omitted)).

In the context of a qualified immunity defense on an unlawful search or arrest claim, a court ascertains whether a defendant violated clearly established law "by asking whether there was 'arguable probable cause'" for the challenged conduct. *Kaufman*, 697 F.3d at 1300. Arguable probable cause is another way of saying that the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007). A defendant "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id*.

A police officer can base a probable cause determination on a witness's statement alone. *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Moreover, "the skepticism and careful

scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an identified victim or ordinary citizen witness." *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985). Absent special circumstances suggesting that a victim-witness is not credible, corroboration is not essential and a police officer should be permitted to assume he is dealing with a trustworthy person. *See United States v. Patane*, 304 F.3d 1013, 1018 (10th Cir. 2002), *rev'd on other grounds*, 542 U.S. 630 (2004); *see also United States v. Gagnon,* 635 F.2d 766, 768 (10th Cir. 1980) ("We have long subscribed to the rule that an affidavit need not set forth facts of a named person's prior history as a reliable informant when the informant is a citizen/neighbor eyewitness with no apparent ulterior motive for providing false information."). In a § 1983 action, the burden is on the plaintiff to show that the witness's statement "did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to conclude that Plaintiff [committed an offense]." *Romero,* 45 F.3d at 1476 & n.1.

The following cases, which evaluate warrantless arrests, provide some guidance on when an officer may rely on a witness statement or how much further he must go in investigating before making an arrest. In *Cortez,* law enforcement arrested "the babysitter's husband" at his residence without a warrant where "the only information [that] arguably implicated" him in possible child molestation "was a statement attributed to a barely-verbal two year old child that her babysitter's 'boyfriend' had 'hurt her pee pee.'" 478 F.3d at 1116. Finding this law enforcement conduct improper, the Tenth Circuit stated, "Plainly, whether we view it as a need for more pre-arrest investigation because of insufficient information, or inadequate

7

corroboration, what the officers had fell short of [what was] reasonably trustworthy information indicating that a crime had been committed by [the plaintiff]." *Id.* at 1116–17 (footnote and citations omitted).

Further, *Lusby v. T.G. & Y. Stores, Inc.* involved an arrest for shoplifting in a retail store in which the Tenth Circuit Court of Appeals concluded that the officers "adhered to" "an impermissible city policy" of "not routinely investigat[ing] merchants' allegations of shoplifting before arresting suspects that the merchant designated." 749 F.2d 1423, 1432 (10th Cir. 1984) (noting that even if the off-duty police officer had been eligible for qualified immunity "he forfeited it by acting unreasonably when he investigated the alleged shoplifting"), *cert. granted and vacated on other grounds sub nom. City of Lawton v. Lusby*, 474 U.S. 805 (1985), *aff'd after reconsideration*, 796 F.2d 1307 (10th Cir. 1986); *see id.* at 1434 (noting that "[t]here was sufficient evidence from which the jury could conclude that a reasonable police officer in [the defendants'] position would have known he was violating the [plaintiffs'] constitutional or statutory rights" when, as the plaintiffs alleged, the officers arrested them "without any independent police investigation to ascertain probable cause").

Lastly, in *Baptiste v. J.C. Penney Co.*, another case involving a shoplifting arrest at a retail store, the Tenth Circuit held that law enforcement "may not ignore *available* and *undisputed* facts." 147 F.3d 1252, 1259 (10th Cir 1998). Consequently, the Tenth Circuit concluded that, where a "videotape . . . does not suggest criminal conduct, but is instead consistent with [the plaintiff's] version of events," "a reasonable officer therefore would not have believed there was probable cause to arrest [the plaintiff]," even though the security guards

alleged the plaintiff's involvement in criminal conduct "based solely on their *interpretation* of events exactly recorded on the videotape." *Id.* at 1259–60 (emphasis added).

Although an arresting officer may not ignore available and undisputed facts, he is not required to investigate an arrestee's alibi witnesses before arresting him. *Romero*, 45 F.3d at 1476. Similarly "police officers are not required to [forgo] making an arrest based on facts supporting probable cause simply because the arrestee offers a different explanation. '[P]robable cause does not require certainty of guilt . . . , but rather only reasonably trustworthy information that would lead a reasonable person to believe an offense was committed.'" *Munday v. Johnson*, 257 F. App'x 126, 134 (10th Cir. 2007) (alteration in original) (citations omitted) (quoting *Patane*, 304 F.3d at 1018, *rev'd on other grounds*, 542 U.S. 630 (2004)). These cases, however, all examined *warrantless* arrests.

Where an arrest is made pursuant to a warrant, however, a § 1983 plaintiff's hurdle in showing that her arrest was improper is even higher. A neutral magistrate's issuance of a warrant is "the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). But "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id*. If "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," the warrant offers no protection. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity will not be granted "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its

9

existence entirely unreasonable." *Messerschmidt*, 132 S. Ct. at 1245 (internal quotation marks omitted).

Nor will a warrant protect officers who misrepresent or omit material facts to the magistrate. The burden is on the plaintiff to "make a substantial showing of deliberate falsehood or reckless disregard for truth" by the officer seeking the warrant. *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990). This test is an objective one: when there is no dispute over the material facts, a court may determine as a matter of law whether a reasonable officer would have found probable cause under the circumstances. *Cortez*, 478 F.3d at 1120–21 ("The conduct was either objectively reasonable under existing law or it was not."). Qualified immunity applies equally to reasonable mistakes of law and fact. *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

To establish reckless disregard in the presentation of information to a magistrate, "there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations . . . and [a] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994). "[T]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most." *Id*. (internal quotation marks and citations omitted); *see also Moldowan v. City of Warren*, 578 F.3d 351, 388 (6th Cir. 2009) (asserting the exculpatory value of evidence must be "apparent" and that "the police cannot be held

accountable for failing to divine the materiality of every possible scrap of evidence"); *Wilson v. Russo*, 212 F.3d 781, 787–88 (3d Cir. 2000) (holding that "omissions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known . . . was the kind of thing the judge would wish to know" and that assertions are in reckless disregard of the truth if they are made "with a high degree of awareness of the statements' probable falsity" (internal quotation marks and alterations omitted)).

## **Analysis**

Defendants set forth 13 Undisputed Material Facts which they assert establish that there was probable cause for Plaintiff's arrest. [Doc. 24] at 2–3. Those facts are supported by the Affidavit of Defendant Carver, [Doc. 24-1], and exhibits incorporated thereto, *id.* at 5–8; [Doc. 24-2]; [Doc. 24-3]. As mentioned above, "A nonmovant must respond to a motion for summary judgment with evidence, and the contents of that evidence must be admissible." *Wall*, 1996 WL 44245, at *1 (citing *Hall*, 935 F.2d at 1110 (where motion for summary judgment is supported by affidavits or other material provided under oath, the nonmovant must respond with affidavits or other evidence to show a genuine issue of material fact)). A party opposing summary judgment may not simply state general disagreement with the movant's statement of material facts. The Local Rules provide:

> The Response must contain a concise statement of the material facts cited by the movant to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the

Memorandum [in support of the motion for summary judgment] will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).

Instead of properly addressing Defendants' assertions of fact, Plaintiff sets forth her own statement of facts. *See* [Doc. 28] at 2–5. These facts are divided into two sections. The first is labelled "FACTS EVENTS [sic] OF ARREST OF PLAINTIFF." *Id.* at 2. Nowhere in this section does Plaintiff identify any of Defendants' assertions of fact. Nor does Plaintiff make any attempt to support her facts with affidavits or other evidence. This section appears to be little more than a narrative summary of Defendants' facts. Plaintiff does add a few facts not asserted by Defendants (that Plaintiff was handcuffed to a wall at the detention center; denied the use of a restroom to deal with menstrual issues; and required to post an appearance bond of $5,000). *Id.* at 3. But the exhibit she relies on to support those allegations (Exhibit A to the Response) references only the appearance bond; it says nothing about the handcuffing or the restroom issue. *See* [Doc. 28-1].

The second section is labelled, "EVENTS FOLLOWING ARREST OF PLAINTIFF." [Doc. 28] at 3. In this section Plaintiff sets forth a number of facts discovered by her criminal defense attorney in the course of his investigation. *Id.* at 3–5. This is the gist of Plaintiff's argument as I understand it. "Had Officer Carver conducted some or all of the investigation my criminal defense attorney did, he would have discovered conflicting information about whether I was the one who had defrauded the victims. Faced with that conflicting information, one of two things would have happened. Either Officer Carver would have realized he did not have probable cause, and therefore would not have pursued the warrant, or the magistrate judge would

have denied the application and not have issued the warrant. And all this is borne out by the fact that the charges against me were eventually dropped." *See generally* [Doc. 28] at 5–8. Therefore, the argument goes, based on these avenues of investigation that Officer Carver did not pursue, his investigation was not "objectively reasonable." There are a number of problems with this argument.

First, the fact that the District Attorney decided not to prosecute Plaintiff has nothing to do with whether there was probable cause for the arrest. Many people are arrested and never prosecuted. There are numerous reasons why the District Attorney may decide not to prosecute a defendant. For example, the District Attorney may simply lack the resources to prosecute non-violent crimes. Or a crucial witness may be unavailable. We don't know why the District Attorney chose not to prosecute Plaintiff. Plaintiff suggests that when given the information discovered by her attorney, the District Attorney decided there was insufficient evidence to obtain a conviction. *See* [Doc. 28] at 5 ("[U]pon disclosure of [the] facts and documents described above to [the] Office of [the] District Attorney, [the] charge of Fraud was dismissed by the State . . . ."). Even assuming that to be true, it doesn't help Plaintiff in this case. In deciding whether to prosecute a case, the District Attorney has to decide whether there is sufficient evidence to convince a jury beyond a reasonable doubt. That is a far higher standard than probable cause for an arrest. There is no evidence in the record upon which a reasonable jury could find that the decision not to prosecute was based on a determination that there was no probable cause for Plaintiff's arrest.

Second, Plaintiff was arrested pursuant to a warrant signed by a magistrate who independently found probable cause to arrest Plaintiff for fraud. That warrant is "the clearest indication that [Officer Carver] acted in an objectively reasonable manner or . . . in objective good faith." *Messerschmidt*, 132 S. Ct. at 1245 (internal quotation marks omitted). Considering that Plaintiff was arrested pursuant to a warrant issued by a neutral magistrate, Plaintiff must show that a reasonable jury could find that Officer Carver's affidavit, on which the warrant relied, (1) was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.*; or (2) included a "deliberate falsehood or reckless disregard for truth," *Snell*, 920 F.2d at 698. Plaintiff shows neither of these.

She points to no evidence from which a reasonable jury could find that Officer Carver was reckless in relying on, among other things, the victim's positive photographic identification of Plaintiff. Plaintiff has the burden to demonstrate that the victim's identification did not constitute reasonably trustworthy information. *See, e.g., Romero*, 45 F.3d at 1476 (describing the burden in a civil suit over an arrest). Plaintiff points to no evidence to suggest that the victim's identification was not trustworthy. *See Sherouse v. Ratchner*, 573 F.3d 1055, 1058 (10th Cir. 2009) (commenting, in dicta, that an officer "would likely be entitled to qualified immunity" on a false arrest claim where it is undisputed that a witness positively identified the arrestee); *Karr v. Smith*, 774 F.2d 1029, 1032 (10th Cir. 1985) (probable cause existed when officer observed that property damage was intentional and owner identified suspect as perpetrator). The discrepancy in the vehicles (i.e., victims reported seeing the swindler's vehicle as a black *SUV*; Plaintiff owns a black *sedan*) is not enough to render the victim's identification

14

of Plaintiff not reasonably trustworthy. Put another way, even if it is assumed that Officer Carver was wrong about the model of the vehicle, no reasonable jury could find that his affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 132 S. Ct. at 1245.

The fact that Plaintiff's criminal defense attorney was able to discover arguably exculpatory evidence says nothing about whether there was probable cause in the first place. [Doc. 28] at 6. For example, the defense attorney found evidence that connected Plaintiff to 314 (rather than 318) West Mermod Street. *Id.* Further, defense counsel discovered that someone named Luis Diaz had rented 318 West Mermod Street during the time that the victims were swindled, and that Mr. Diaz's phone number was the same number the swindler had given the victims. *Id.* None of this helps Plaintiff in this case. Plaintiff does not allege that Officer Carver knew any of this information when he submitted his affidavit to the magistrate. *Id.* In fact, Plaintiff affirmatively acknowledges that Officer Carver did *not* know any of this. *See id.* Considering that he did not know this other information, the Court fails to see how a reasonable jury could find that Officer Carver's affidavit, on which the arrest warrant relied, (1) was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.*; or (2) included a "deliberate falsehood or reckless disregard for truth," *Snell*, 920 F.2d at 698. Simply put, the additional information discovered by the defense attorney does not negate the probable cause established by the victims' identification of Plaintiff. None of the arguably exculpatory information discovered by the defense attorney—viewed separately or in

15

the aggregate—would amount to an "obvious reason[] to doubt the veracity of [Officer Carver's] affidavit." *Beard*, 24 F.3d at 116.

As for Plaintiff's suggestion that Officer Carver was obliged to delay seeking the arrest warrant and, instead, continue his investigation until he discovered this information, the Court does not agree. Such a requirement goes beyond the holdings of *Cortez, Lusby*, and *Baptiste*, each of which only required officers to interview *readily available* witnesses or otherwise review *readily available* exculpatory evidence. *See Cortez*, 478 F.3d at 1117 ("[W]itnesses were readily available for interviews . . . . Defendants, however, did not . . . interview the girl [who may have been molested by the arrestee], her mother, the nurse, or the doctor . . . . In other words, Defendants conducted no investigation."); *Baptiste*, 147 F.3d at 1259 (holding that officers could not rely on security guards' statements that arrestee had shoplifted where easily accessible video showed their account was inaccurate); *Lusby*, 749 F.2d at 1431 (faulting officer for failing to interview cashier from whom the plaintiff had purchased item that officer believed she had stolen). A rule that would have obliged Officer Carver to pursue the investigatory path blazed by the defense counsel would represent an expansion of what was required of the officers in *Cortez, Lusby*, and *Baptiste*. Plaintiff had no constitutional right that required Officer Carver to conduct a more thorough investigation before seeking a warrant for Plaintiff's arrest.

Even assuming *arguendo* that such a right existed, it could not have been clearly established law at the time Officer Carver submitted his affidavit to the magistrate. Plaintiff had the burden of showing that the constitutional right the Defendants allegedly violated "was clearly

established at the time of the violation." *Kaufman*, 697 F.3d at 1300. She has failed to make that showing.

## Conclusion

Because there was no federal constitutional violation, Officer Carver is entitled to qualified immunity and summary judgment in his favor on the federal claims. Likewise, because there was no federal constitutional violation, the Carlsbad Police Department is also entitled to summary judgment in its favor on all federal claims.[8] *See Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if . . . the municipal employee committed no constitutional violation.").

Finally, the Court declines to exercise supplemental jurisdiction over the state-law claims, which should be dismissed without prejudice. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (Generally, "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [pendent] jurisdiction by dismissing the case without prejudice." (internal quotation marks and brackets omitted)); 28 U.S.C. § 1367(c)(3).

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion to Dismiss and/or for Summary Judgment and for Qualified Immunity and Memorandum of Law in Support Therefor[] [Doc. 24] is **GRANTED in part**. Defendants are entitled to summary judgment in their favor on all federal claims. The state-law claims are **DISMISSED without prejudice**.

---

[8] To the extent that Plaintiff requests discovery, *see* [Doc. 28] at 6 ("In regard to the claims against the City of Carlsbad and Carlsbad Police Department, Plaintiff acknowledges that in the absence of discovery, no specific policy or custom can be described."), such request is denied because it would be futile.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Exhibit Attached to Plaintiff's Response to Defendants' Motion . . . [Doc. 34] is **DENIED as moot**.

**IT IS SO ORDERED**.

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**